UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.: 22-cv-61693-JEM/Becerra

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff

v.

VINCENT J. CAPUTO,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

**THIS CAUSE** came before the Court on Plaintiff Securities and Exchange Commission's ("Commission) Motion for Default Final Judgment against Defendant Vincent J. Caputo.[1] ECF No. [11]. The Commission also filed supporting declarations of Mark Dee, an accountant with the Commission, and Christine Nestor, Senior Trial Counsel with the Commission. ECF Nos. [11-1], [11-2]. Caputo did not file a response to the Motion and the time to do so has passed. Upon due consideration of the Motion and supporting declarations, the pertinent portions of the record, and being otherwise fully advised in the premises, it is hereby **RECOMMENDED** that the Motion be **GRANTED**.

    I.    **BACKGROUND**

This is an action for alleged violations of Section 15(a)(1) of the Securities Exchange Act ("Exchange Act"). The Commission alleges that from July 2018 to April 2019, Caputo acted as an unregistered broker on behalf of TBG Holdings Corporation ("TBG"), a venture capital firm

---

[1] This matter was referred to the undersigned by the Honorable Jose E. Martinez, United States District Judge. ECF No. [12].

that assisted MediXall Group Inc. ("MediXall"), a health management company, raise capital by selling its securities to investors. ECF No. [1] at ¶¶ at 1, 10. MediXall is a microcap company quoted on the OTC Markets Group, Inc., also known as a penny stock. *Id*. at ¶ 1. The Commission alleges that Caputo acted as both a "fronter" and a "closer." *Id*. at ¶ 13. In particular, the Commission alleges that Caputo "held himself out as a financial professional and the senior vice president of TBG," and "actively solicit[ed] investors to buy MediXall stock through telephone calls, emails, and postal mail." *Id.* at ¶¶ 13,14. The Commission further alleges that Caputo "provid[ed] investors with MediXall's Private Placement Memorandums and other offering materials," "sen[t] and receiv[ed] subscription agreements to and from investors," and "advised investors on the merits of the investments." *Id.* at ¶ 14.

The Commission also alleges that Caputo "instilled a sense of urgency" when soliciting investors by telling them that "MediXall's stock price was set to nearly double in price …within days." *Id*. at ¶ 16. According to the Complaint, Caputo sold "over $500,000 of MediXall stock" to "dozens of investors," for which he was paid "approximately $25,000 in transaction-based compensation." *Id*. at ¶ 17. The Commission alleges that Caputo "was not registered as or associated with a Commission registered-broker dealer while he offered and sold MediXall stock to investors." *Id*. at ¶ 18.

The Complaint raises a single claim for violation of Section 15(a)(1) of the Exchange Act. *Id*. at ¶ 20. Specifically, the Commission alleges that Caputo utilized "the mails or any means or instrumentality of interstate commerce" to "effect[] transactions in, or induce[] or attempt[] to induce the purchase or sale of securities" when he was "not registered with the Commission as a broker or dealer or when he was not associated with an entity registered with the Commission as a broker or dealer." *Id*. at ¶ 20. The Commission seeks entry of an order directing Caputo to pay a civil penalty and disgorge the proceeds he received, along with prejudgment interest, and

imposition of a permanent injunction barring Caputo from further violating Section 15(a)(1) of the Exchange Act and participating in any offering of a penny stock. *Id.* at 6.

On October 13, 2022, the Commission sent a copy of the Complaint and a Waiver of the Service of Summons form to Caputo. ECF No. [6]. Caputo signed the Waiver agreeing to waive service of process and acknowledging that his response to the Complaint must be filed within 60 days. *Id.* The deadline for Caputo to file his response to the Complaint was December 12, 2022. Caputo did not do so, nor did he request an extension of time. Accordingly, on December 22, 2022, the Clerk entered a default against Caputo for failure to appear, answer or otherwise defend against the Complaint. ECF No. [8].

Thereafter, the Court entered an Order on Final Default Judgment Procedure which, among other things, required Caputo to file a response to the Complaint and a motion to set aside the Clerk's Default by February 21, 2023. ECF No. [9]. The next day, the Commission served Caputo with the Order on Final Default Judgment Procedure. ECF No. [10]. Caputo did not comply with the Court's Order, nor did he seek an extension of the deadline therein.

## II.     INSTANT MOTION

The Commission filed a Motion for Default Final Judgment, along with two supporting Declarations. ECF Nos. [11], [11-1], [11-2]. The Commission argues that entry of a default judgment is appropriate because the Complaint's well-pled allegations, which are deemed admitted by virtue of the Clerk's Default, establish Caputo's liability. ECF No. [11] at 5-6. In particular, the Commission asserts that Caputo violated Section 15(a) of the Exchange Act when he "actively solicited investments in MediXall through telephone calls and emails, provided investors with [Private Placement Memorandums] and other offering materials, advised investors on the merits of the investments, and received $25,000 in transaction-based compensation" while he was not registered with the Commission as a broker or associated with a registered broker-

3

dealer. *See id.* at 6.  The Commission asks the Court to issue a permanent injunction enjoining Caputo from violating Section 15(a) of the Exchange Act and participating in any future offerings of penny stocks.  *Id*. at 7-8, 12.  The Commission also seeks an order requiring Caputo to pay disgorgement of $25,000.00 and prejudgment interest of $4,359.13, which is based on calculations performed by Mark Dee, an accountant with the Commission.  *Id*. at 8-10; ECF No. [11-1].  According to Mr. Dee's Declaration, he calculated the amount of disgorgement based upon his review of checks that Caputo received in connection with his sales of MediXall stock, and used the Commission's automated program to calculate prejudgment interest based upon the amount of disgorgement due and the relevant violation dates.  ECF No. [11-1] at ¶¶ 4-7.  Finally, the Commission seeks an order requiring Caputo to pay a civil penalty of $50,000.00 pursuant to Section 21(d)(3) of the Exchange Act.  ECF No. [11] at 10-11.  The Commission contends that this figure is warranted in light of Caputo's personal solicitation of investors while unregistered, his prior disciplinary history, and the substantial amount of stock (over $500,000.00) that he sold.  *Id*. at 11. Caputo was served with a copy of the Motion via email and UPS, but did not file a response and the time to do so has passed.

### III.    ANALYSIS

Federal Rule of Civil Procedure 55 sets forth the procedure for obtaining a default judgment.  First, subsection (a) provides that the Clerk of Court must enter default when the defendant fails "to plead or otherwise defend." Fed. R. Civ. P. 55(a).  Next, upon the entry of a clerk's default, the Court must enter a judgment "[i]f the plaintiff's claim is for a sum certain or a sum that can be made certain by computation, the clerk--on the plaintiff's request, with an affidavit showing the amount due . . . ." *Id.* at 55(b)(1).

A default admits plaintiff's well-plead allegations of fact. *Lary v. Trinity Physician Fin. & Ins. Services*, 780 F.3d 1101, 1106 (11th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Houston*

*Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).  Thus, in determining whether default judgment may be entered, courts must review the allegations in the complaint to determine whether there is a "sufficient basis in the pleadings for the particular relief sought."  *United States v. Genesis II Church of Health & Healing*, 476 F. Supp. 3d 1283, 1289 (S.D. Fla. 2020) (citing *Tyco Fire & Sec., LLC v. Alcocer*, 218 F. App'x 860, 863 (11th Cir. 2007)); *see also Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1245 (11th Cir. 2015) (noting that the "sufficient basis" standard is akin to the motion to dismiss standard).

Once liability has been established, "[d]amages may be awarded only if the record adequately reflects the basis for award via a hearing or a demonstration by detailed affidavits establishing the necessary facts."  *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985)) (quotations omitted).  Rule 55 does not require an evidentiary hearing on damages where the amount claimed is either liquidated or capable of arithmetic calculation.  *Safari Programs, Inc. v. CollectA Int'l Ltd.*, 686 Fed. Appx. 737, 746–47 (11th Cir. 2017) ("[E]videntiary hearings are required in all but limited circumstances, such as when hearing any additional evidence would be truly unnecessary to a fully informed determination of damages") (quotations omitted); *Tara Productions, Inc. v. Hollywood Gadgets, Inc.*, 449 F. App'x 908, 911–12 (11th Cir. 2011) (noting that under Rule 55, district courts are not required to conduct evidentiary hearings).

**A. Caputo Is Liable For Violating Section 15(a) of the Exchange Act.**

Section 15(a) of the Exchange Act, 15 U.S.C. 78o(a), prohibits any broker from using interstate commerce to effect transactions in securities or to induce or attempt to induce others to purchase or sell securities unless the broker is registered with the Commission under Section 15(b) of the Exchange Act. 15 U.S.C. §78o(b). Section 3(a)(4) of the Exchange Act, 15 U.S.C. §78c(a)(4), defines a "broker" as any person engaged in the business of effecting transactions in

5

securities for the account of others. Courts consider the following factors in determining whether a person acted as a broker: "whether the person: 1) actively solicited investors; 2) advised investors as to the merits of an investment; 3) acted with a certain regularity of participation in securities transactions; and 4) received commissions or transaction-based compensation." *SEC v. Walker*, No. 20-cv-62564, 2021 WL 5088854, at *2 (S.D. Fla. Aug. 16, 2021) (quotation marks and citation omitted). The Commission is not required to prove that Caputo acted with scienter to establish a violation of Section 15(a). *SEC v. Corporate Relations Group, Inc.*, No. 6:99-cv-1222, 2003 WL 25570113, at *17 (M.D. Fla. March 28, 2003) ("As correctly noted by the SEC, scienter is not required for Section 15(a) violations.") (citations omitted).

By virtue of the factual allegations in the Complaint, which Caputo admitted as a result of his default, the SEC has established that Caputo actively solicited investors to purchase MediXall securities between July 2018 and April 2019 through use of telephone calls, emails and postal mail, including providing investors with MediXall's Private Placement Memorandums and other offering materials, and sending and receiving subscription agreements to and from investors. ECF No. [1] at ¶ 14. Further, Caputo provided investors with news, videos and other information regarding MediXall and encouraged investors "not to miss the opportunity to invest in MediXall, as the company was rapidly evolving." *Id*. at ¶ 15. Caputo also advised investors on the merits of the investments, as well as how and where to send their funds, and received $25,000.00 in transaction-based compensation, including commissions. *Id*. at ¶¶ 12, 17; *see also* ECF No. [11-1] at 3-14. At the time that Caputo offered and sold MediXall stock to investors, he was not registered as a broker with the Commission or associated with a Commission-registered broker. *Id*. at ¶ 18.

Accordingly, the undersigned concludes that Caputo acted as a broker who used the means or instrumentalities of interstate commerce to attempt to induce, and in some instances did induce,

6

others to purchase MediXall securities despite not being registered with the Commission to do so. Thus, the Commission has established that Caputo violated Section 15(a)(1) of the Exchange Act by acting as an unregistered broker.

### B. The Commission Is Entitled To A Permanent Injunction.

The Commission seeks entry of a permanent injunction that prohibits Caputo from further violations of Section 15(a)(1) of the Exchange Act. ECF Nos. [1] at 6; [11] at 7-8. "The SEC is entitled to injunctive relief when it establishes (1) a prima facie case of previous violations of federal securities laws, and (2) a reasonable likelihood that the wrong will be repeated." *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004) (citation omitted). With respect to the second element, "[i]ndicia that a wrong will be repeated include the "egregiousness of the defendant's actions, the isolated or recurrent nature of the infraction, the degree of scienter involved, the sincerity of the defendant's assurances against future violations, the defendant's recognition of the wrongful nature of the conduct, and the likelihood that the defendant's occupation will present opportunities for future violations." *Id*. at 1216 (citations omitted). Scienter is "an important factor" in determining whether there is a reasonable likelihood of future violations, but "it is not a prerequisite to injunctive relief." *Id*. (citations omitted).

The Commission has satisfied both elements. Caputo repeatedly violated Section 15(a)(1) of the Exchange Act when, as discussed above, he actively solicited investors in MediXall securities on multiple occasions in exchange for commissions and other transaction-based compensation despite failing to register with the Commission as a broker. ECF No [1] at ¶¶ 13-18. The first element is therefore met. So too is the second element. Caputo raised half a million dollars from dozens of investors while acting as an unregistered broker. *Id*. at ¶ 17. He also instilled a sense of urgency by telling investors that MediXall's stock price was going to nearly double in price, from $.60 to $1.00, within days. *Id*. at ¶ 16. Caputo took these actions despite

7

twice being subject to disciplinary action by the National Futures Association for engaging in fraudulent and deceptive sales presentations. *Id*. at ¶ 4.  Further, he has not admitted the wrongfulness of his conduct nor provided assurances against future violations, as evidenced by his failure to appear and defend himself in this action.  For these reasons, the undersigned concludes that the Commission is entitled to a permanent injunction prohibiting Caputo from violating Section 15(a)(1) of the Exchange Act.  *See e.g., SEC v. Sky Way Global*, No. 8:09-cv-455-T-23TBM, 2010 WL 3025033, at *1 (M.D. Fla. July 29, 2010); *SEC v. Baker*, No. 1:19-cv-02565, 2021 WL 9385893, at *4-5 (N.D. Ga. Nov. 8, 2021).

### C. The Commission Is Entitled To A Penny Stock Bar.

Section 21(d)(6)(A) of the Exchange Act authorizes permanent prohibition against a defendant's participating in future offerings of penny stock if the defendant's misconduct involved an offering of penny stock.  15 U.S.C. § 78u(d)(6); *SEC v. Almagarby*, 17-cv-62255, 2021 WL 4461831, at * 4 (S.D. Fla. Aug. 16, 2021) ("Under the Exchange Act, a court may prohibit any person who, at the time of the alleged misconduct, was participating in any offering of penny stock from participating in any future offering of penny stock.") (citing 15 U.S.C. §§ 77t(g), 78u(d)(6)). "Before a court may enter a penny stock bar, the SEC must demonstrate that the stock at issue in the violations under review is, in fact, a penny stock." S*EC v. Huff*, 758 F. Supp. 2d 1288, 1357 (S.D. Fla. 2010).

Here, the Commission alleges that MediXall's securities qualified as a penny stock during the relevant period, ECF No. [1] at ¶ 5, and this allegation is deemed admitted as a result of Caputo's default.  Thus, Caputo's repeated misconduct involved the offering of a penny stock, as is necessary to impose a penny stock bar.  Further, there is a reasonable likelihood that Caputo will engage in unlawful conduct related to penny stocks in the future, for the same reasons explained above which warrant entry of a permanent injunction.  Accordingly, the undersigned concludes

that the Commission is entitled to a permanent injunction barring Caputo from participating in any offering of a penny stock.

### D. The Commission Is Entitled To Disgorgement.

The Commission seeks an order requiring Caputo to disgorge all ill-gotten gains or proceeds received from his misconduct, including prejudgment interest. ECF Nos. [1] at 6; [11] at 8-10. "In any action or proceeding brought by the Commission under any provision of the securities laws, the Commission may seek, and any Federal court may order, disgorgement." 15 U.S.C. § 78u(d)(7) (2021). Disgorgement is an equitable remedy that "deprive[s] wrongdoers of their net profits from unlawful activity[.]" *Liu v. SEC*, 140 S. Ct. 1936, 1942 (2020). "In order to be entitled to disgorgement, the SEC needs to produce only a reasonable approximation of the defendant's ill-gotten gains, and exactitude is not a requirement." *SEC. v. Monterosso*, 756 F.3d 1326, 1337 (11th Cir. 2014) (quotation marks and citation omitted). "Once the SEC has produced a reasonable approximation of the defendant's unlawfully acquired assets, the burden shifts to the defendant to demonstrate the SEC's estimate is not reasonable." *Id*. at 1337 (citation omitted).

The Commission has submitted the Declaration of Mark Dee, an accountant with the Commission who reviewed various documents, including MediXall's bank records, related to the compensation that Caputo received in connection with his sale of MediXall stock between August 2018 and April 2019. ECF No. [11-1] at ¶¶ 2, 4. These documents include several checks from MediXall to Caputo totaling $25,000.00, which represent Caputo's transaction-based compensation. *Id*. at ¶ 5, pp. 3-14. Caputo has not challenged this evidence and, thus, the Commission has satisfied its burden to produce a reasonable approximation of Caputo's net profits.

With respect to prejudgment interest, the decision whether to award prejudgment interest is within the Court's discretion. *See SEC v. Merch. Capital, LLC*, 486 F. App'x 93, 97 (11th Cir. 2012). An award of prejudgment interest is appropriate because "[w]ithout prejudgment interest,

9

[Caputo] would have benefitted from what in effect amounted to interest-free loans of the ill-gotten funds." *Id*. Prejudgment interest on disgorgement is generally calculated using the Internal Revenue Service underpayment rate. *See SEC v. Lauer*, 478 F. App'x 550, 557–58 (11th Cir. 2012) (upholding use of the IRS underpayment rate to calculate prejudgment interest). According to Mr. Dee's calculations, prejudgment interest from May 1, 2019 through February 28, 2023 totals $4,359.13. ECF No. [11-1] at ¶¶ 6-7, p. 15.

For the foregoing reasons, the undersigned concludes that the Commission is entitled to an award of disgorgement in the amount of $25,000.00 plus prejudgment interest of $4,359.13.

### E. The Commission Is Entitled To A Civil Penalty.

The Commission requests that the Court order Caputo to pay a civil penalty of $50,000.00. ECF Nos. [1] at 6; [11] at 10-11. Section 21(d)(3) of the Exchange Act authorizes the Commission to seek a civil penalty upon "a proper showing that a violation has occurred, and a penalty is warranted." *SEC v. Warren*, 534 F.3d 1368, 1370 (11th Cir. 2008) (citing 15 U.S.C. § 78u(d)(3)). The Exchange Act sets forth three tiers of civil penalties based on the nature of the violation. 15 U.S.C. § 78u(d)(3)(B)(i-iii). The Commission relies on the first tier, which provides that the amount of the penalty "shall be determined in light of the facts and circumstances" and for *each* violation "shall not exceed the greater of (I) $5,000 for a natural person or $50,000 for any other person, or (II) the gross amount of pecuniary gain to such defendant as a result of the violation." 15 U.S.C. § 78u(d)(3)(B)(i).

As discussed above, the Commission has established that Caputo violated Section 15(a)(1) of the Exchange Act, and thus has made "a proper showing that a violation has occurred." The Commission has also shown that a penalty is warranted. "Civil penalties are intended to punish the individual wrongdoer and to deter him and others from future securities violations." *SEC v. Monterosso*, 756 F.3d 1326, 1338 (11th Cir. 2014) (citation omitted). Courts consider a variety of

10

factors when imposing a civil penalty, including: "(1) the egregiousness of the violations at issue, (2) defendants' scienter, (3) the repeated nature of the violations, (4) defendants' failure to admit to their wrongdoing; (5) whether defendants' conduct created substantial losses or the risk of substantial losses to other persons; (6) defendants' lack of cooperation and honesty with authorities, if any; and (7) whether the penalty that would otherwise be appropriate should be reduced due to defendants' demonstrated current and future financial condition." *SEC v. Huff*, 758 F. Supp. 2d 1288, 1364 (S.D. Fla. 2010) (citation omitted).

The record establishes that Caputo personally solicited dozens of investors to purchase $500,000.00 of MediXall securities during a nine-month period, despite failing to register with the Commission as a broker and despite facing previous disciplinary action for engaging in fraudulent and deceptive sales solicitations. Caputo has not cooperated with the authorities or admitted his wrongdoing, as evidenced by his default in this action. Further, Caputo has not responded to the Motion, and thus, failed to demonstrate that the Court should reduce the amount of the civil penalty based upon his current or future financial condition. Having carefully considered the foregoing factors and the record before the Court, the undersigned concludes that the Commission has shown that a civil penalty is warranted.

As for the amount of that penalty, the evidence reflects at least twelve separate instances where Caputo received compensation from MediXall in connection with his sale of MediXall securities. *See* ECF No. [11-1] at ¶ 5, pp. 3-14 (attaching twelve checks from MediXall payable to Caputo during the relevant period). Each of these instances constitutes a separate violation for purposes of calculating the civil penalty. *See e.g., SEC v. Weintraub*, No. 11-21549-CIV, 2012 WL 13012751 (S.D. Fla. Jan. 10, 2012) (for purposes of imposing civil penalty, number of violations may be determined based on the "number of instances of violative conduct, or by each separate claim for which the defendant is liable."); *cf., SEC v. Huff*, 758 F. Supp. 2d 1288 (S.D.

11

Fla. 2010) (imposing a penalty for each fraudulent filing made by the Defendant). The Commission contends that the maximum penalty per violation is $11,162.00, which adjusts the $5,000.00 figure set forth in Section 21(d)(3) for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 17 CFR § 201.1001. ECF No. [11] at 10; *see also SEC v. Almagarby*, No. 17:62255-cv, 2021 WL 4461831, at *4 n.1 (S.D.Fla. Aug. 16, 2021) (adjusting the civil penalty according to 17 C.F.R. § 201.1001). The Commission has established that Caputo committed at least twelve violations of Section 15(a)(1) and therefore, the record supports the Commission's requested penalty of $50,000.00 irrespective of whether the $5,000.00 statutory amount is adjusted for inflation.

Accordingly, the undersigned concludes that imposition of a civil penalty in the amount of $50,000.00 is warranted.

## IV. CONCLUSION

Based on the foregoing, it is hereby **RECOMMENDED** that Plaintiff's Motion for Default Final Judgement, ECF No. [11], be **GRANTED** and the Court enter a permanent injunction and a penny stock bar, and order Caputo to pay $29,359.13 in disgorgement and prejudgment interest, as well as a civil penalty in the amount of $50,000.00, as set forth in the Commission's Proposed Default Final Judgment, ECF No. [11-3].

## V. OBJECTIONS

A party shall serve and file written objections, if any, to this Report and Recommendation with the District Court within **FIVE (5) DAYS** of being served with a copy of this Report and Recommendation. The undersigned has shortened the objection period because the Defendant has not made any appearance in this lawsuit. Failure to timely file objections will bar a *de novo* determination by the District Judge of anything in this Recommendation and shall constitute a waiver of a party's "right to challenge on appeal the district court's order based on unobjected-to

factual and legal conclusions." 11th Cir. R. 3-1 (2016); 28 U.S.C. § 636(b)(1)(C); *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, on May 17, 2023.

_____
**JACQUELINE BECERRA**
**United States Magistrate Judge**